**WO**

**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT A. MACKENZIE, trustee of the bankruptcy estate of WAVO corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LEONARD, COLLINS AND GILLESPIE, P.C., et al.,<br><br>Defendants. | No. CV-08-1737-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss of Defendant Charleen M. Lucia (Dkt. # 49) and the Motion to Dismiss of Defendants Lucia Stark Williamson LLP ("LSW"), Curt and Julie Clausen, and Charleen M. Lucia (Dkt. # 50) which has been joined by all other Defendants (Dkt. ## 52, 58, 68). For the following reasons, the Court denies both motions.[1]

**BACKGROUND**

In 2001, National Datacast, Inc. ("NDI"), a creditor of WAVO corporation, obtained a judgment against WAVO. While trying to execute the judgment, NDI determined during the course of discovery that the officers and directors of WAVO had engaged in fraud, breach of fiduciary duty, mismanagement, and self-dealing. NDI and other creditors of

---

[1] Plaintiff has also filed two Motions for Leave to File Sur-Replies, arguing that Defendants have made new arguments in their reply briefs. (Dkt. ## 92, 95.) The Court does not find Plaintiff's Sur-Replies helpful and therefore denies the motions.

1 WAVO filed an involuntary bankruptcy petition against WAVO to prevent the further
2 dissipation of WAVO's assets and to recover transfers made from WAVO to third parties.
3 Patrick Abele was appointed as Trustee of the WAVO Bankruptcy Estate. As Trustee, Abele
4 retained Defendants Leonard, Collins, and Gillespie, P.C. ("LC&G"); Collins, May, Potenza,
5 Baran & Gillespie ("the Collins Firm"); Treon, Strick, Lucia, and Aguirre, P.A. ("TSL&A");
6 and Treon, Whitten, and Berry, PLLC ("TW&B") as counsel for various actions in
7 connection with the Bankruptcy Estate (collectively "The Law Firm Defendants").
8       On October 3, 2003, TSL&A, TW&B, attorneys Anthony R. Lucia, Curt W. Clausen
9 and Christopher J. Berry, together with Thomas S. Moring, an associate of TW&B, filed a
10 complaint on behalf of Abele against the officers of WAVO, their respective wives, and
11 Plymouth DeWitt, L.L.C., a Nevada corporation owned by David Deeds, a former officer of
12 WAVO ("the Deeds Litigation"). In August 2004, Abele retained Defendants Lucia Stark
13 Williamson LLP ("the Lucia Firm") and Whitten Berry, PLLC ("the Berry Firm") as special
14 counsel to substitute for the firms of TSL&A and TW&B, respectively. However, the Deeds
15 Litigation apparently did not progress actively.
16       On May 24, 2005, Anthony R. Lucia passed away. Plaintiff alleges that without
17 Lucia, various Defendants were not competent to handle the Deeds Litigation. Plaintiff
18 alleges that for more than seven months following Lucia's death, Defendants did nothing to
19 advance the estate's claims or suggest alternate counsel. On January 26, 2006, the District
20 Court found, among other things, that the Law Firm Defendants and their attorneys failed to
21 prosecute the Deeds Litigation and the court dismissed the case with prejudice against Abele.
22 Following the dismissal of the Deeds Litigation, Abele resigned as Trustee and Plaintiff
23 Robert A. Mackenzie was appointed Substitute Trustee. On April 24, 2008, the Ninth Circuit
24 affirmed the dismissal by the District Court.
25       In September 2008, Plaintiff filed a complaint against the Law Firm Defendants,
26 Daniel P. Collins, Curt W. Clausen, Christopher J. Berry, and Charleen M. Lucia as personal
27 representative of Anthony R. Lucia ("the Attorney Defendants"), and Roseanne K. Collins,
28 Julie Clausen, Jean Ann Berry and Charleen M. Lucia in an individual capacity ("the Spouse

Defendants"). Defendant Charleen M. Lucia and Defendants LSW, Curt W. Clausen, and Lucia filed Motions to Dismiss (Dkt. ## 49, 50).

## DISCUSSION

**I. Motion to Dismiss Suit Against Charleen M. Lucia in her Capacity as Personal Representative of the Estate of Anthony R. Lucia and as an Individual**

Charleen M. Lucia argues: (1) that claims against her as the representative of the Estate of Anthony Lucia are time-barred, and (2) that claims cannot be brought against her as an individual and former spouse of Anthony Lucia because the marital community was dissolved by death. (Dkt. # 49 at 3.)

### A. Statute of Limitations

Defendant argues that all claims brought against her as the personal representative of Mr. Lucia's Estate are barred by the statute of limitations because they were not filed within four months of April 24, 2008, the date the Ninth Circuit issued its decision affirming the termination of the Deeds Litigation. Plaintiff responds by arguing that the statute of limitations did not accrue until July 23, 2008, ninety days after the Ninth Circuit's judgment and the date the opportunity to petition for a writ of certiorari to the United States Supreme Court expired. *See* Sup. Ct. R. 13. The parties agree that the relevant statute of limitations is found in Arizona Revised Statutes section 14-3803. That section states that in these circumstances, any claim against a decedent's estate must be made within "four months after [the claim] arises." Ariz. Rev. Stat. § 14-3803(C)(2).

When a claim for legal malpractice arises during the course of litigation is governed by the two *Amfac* cases. In *Amfac Distribution Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 (Ct. App.1983) (*Amfac I*), the Arizona Court of Appeals held that "a cause of action for legal malpractice occurring in the course of litigation accrues when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain and not contingent upon the outcome of an appeal." *Id.* at 156, 673 P.2d at 796. The Arizona Supreme Court then affirmed and supplemented that holding, stating that "in legal malpractice cases, the injury or damaging effect on the unsuccessful party is not ascertainable

until the appellate process is completed or is waived by a failure to appeal." *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983) (*Amfac II*).[2]

In this case, the last day on which a petition for writ of certiorari could have been filed with the Supreme Court of the United States was July 23, 2008. *See* Sup. Ct. R. 13. That is the date on which "the appellate process [was] completed or waived by a failure to appeal," *id.*, and thus the date after which the claim accrued. Before that date, damages were still "contingent on the outcome of the appeal," *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796, because Defendants could have elected to file a petition for writ of certiorari with the Supreme Court of the United States

In her reply brief, Defendant argues for the first time that *Joel Erik Thompson, Ltd. v. Holder*, 192 Ariz. 348, 965 P.2d 82 (Ct. App. 1998), dictates that the appellate process was completed not on April 24, 2008, the date of the court of appeals' decision, but rather on May 20, 2008, the day the court issued its mandate. We need not consider this argument since it was first raised in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Nevertheless, this case is distinguishable from *Joel*. In *Joel*, the Arizona Court of Appeals held "that the mandate establishes the completion of the appellate process." 142 Ariz. at 349, 965 P.2d at 83. However, the *Joel* court was specifically addressing the question: "when is the appellate process completed in an appeal finally resolved by the court of appeals *without a petition for supreme court review*?" *Id.* at 348-49, 965 P.2d at 82-83 (emphasis added). Moreover, the mandate in *Joel* was issued *after* the deadline for appeal to the Arizona Supreme Court had passed. *Id.* at 350, 965 P.2d at 84. The mandate was the final judgment in the case and it brought the "appeal to a formal, final end." *Id.* at 349, 965 P.2d at 83.

---

[2]The *Amfac II* court uses the phrase "failure to appeal" in referring to the finality of the appellate process. However, appeals made to the Supreme Court of the United States (the highest-level court at issue here) are discretionary and require a petition for a writ of certiorari. Thus, in this case a more accurate statement of the rule would be that "the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to petition for a writ of certiorari."

- 4 -

In this case, by contrast, the Ninth Circuit's mandate was issued *before* Plaintiff's opportunity to petition for a writ of certiorari to the Supreme Court expired. Had Plaintiff filed the writ of certiorari with the Supreme Court, and had the case been accepted, damages would have remained "contingent on the outcome of the appeal." *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796. Thus, the appellate process was not "completed or . . . waived by a failure to appeal" until Plaintiff's opportunity to file a writ of certiorari with the Supreme Court expired on July 23, 2008. *See Amfac II*, 138 Ariz. at 154, 673 P.2d at 794. Plaintiff's Complaint against Defendant as representative of Anthony R. Lucia's estate therefore was timely filed under Arizona law.

### B. Community Property

Defendant next argues that all claims brought against her individually as Anthony R. Lucia's former spouse must be dismissed because the Supreme Court of Arizona has held that "a community is dissolved by death." *Tway v. Payne*, 55 Ariz. 343, 344, 101 P.2d 455, 456 (1940). Plaintiff responds by arguing that even though the marital community was dissolved upon Mr. Lucia's death, Defendant still can be liable for damages because the legal malpractice for which Mr. Lucia was allegedly responsible occurred during his life while he was engaged in the practice of law for the benefit of the marital community.

In Arizona, a spouse can be liable for a debt incurred by a decedent spouse while furthering a community purpose. *See Samaritan Health Sys. v. Caldwell*, 191 Ariz. 479, 957 P.2d 1373 (Ct. App. 1998). In *Samaritan*, the Arizona Court of Appeals held that a creditor could proceed against the spouse of a decedent for an obligation incurred by the community of which the spouse was a partner. *Id.* at 484, 957 P.2d at 1378. The court stated that "even though the community no longer exists . . . its obligations become the subjects of joint liability of the former spouses." *Id.* at 483, 957 P.2d at 1377. It is clear from *Samaritan* that Defendant can be liable for damages even after the community was dissolved by Lucia's death.

In her reply brief, Defendant argues that the Arizona community property statutes distinguish between debts contracted by a spouse and tort liability incurred by a spouse prior

- 5 -

to death. (Dkt. # 83 at 3.) In support of that argument, Defendant cites Arizona Revised Statutes sections 25-214 and 25-215. However, these statutes do not suggest that contract debts survive the death of a member of the community while obligations otherwise incurred by a community member do not. Section 25-215(D), in fact, specifies that the community is responsible not only for debts but for obligations that arise from one spouse "otherwise act[ing] for the benefit of the community." Ariz. Rev. Stat. § 25-215(D).

The only case on which Defendant relies is *Peagler v. Phoenix Newspapers, Inc.*, 26 Ariz. App. 274, 547 P.2d 1074 (Ct. App. 1976), *reversed on other grounds by* 114 Ariz. 309, 560 P.2d 1216 (1977). In *Peagler*, the Arizona Court of Appeals held that a surviving spouse could not be sued for the community liability of a tortfeasor who committed libel. *Id.* at 283-85, 547 P.2d at 1083-85. However, the court so held because the Arizona statutes exclude libel as a surviving tort. *See id.* (citing Ariz. Rev. Stat. § 14-3110 ("Every cause of action, except a cause of action for . . . libel [among others] . . . shall survive the death of the person entitled thereto or liable therefor . . . .")). In this case, the relevant tort is not libel, but legal malpractice, which is not excluded as a surviving tort. *See* Ariz. Rev. Stat. § 14-3110.

*Peagler* did distinguish between contractual and tort liability for community debts, but only in the context of discussing the pleading and proof required to assert community liability. *See* 26 Ariz. App. at 284-85, 547 P.2d at 1084-85. The Court explained that when suing for debts or contractual obligations, the plaintiff need not plead the facts and circumstances showing the liability of the community property, but that when liability is asserted based upon a tort committed by one of the spouses, there is no presumption of community liability and such liability must be pleaded and proved. *Id.* As *Peagler* itself points out, the court was not holding that all community liability for one spouse's torts fails to survive the death of that spouse. *Id.* at 283, 547 P.2d at 1083 ("[C]ommunity tort liability may survive the death of the culpable member of that community . . . ."). The Arizona Supreme Court has long-recognized that it can. *See Mortensen v. Knight*, 81 Ariz. 325, 305 P.2d 463 (1956) (permitting recovery from the community property of a surviving husband for the negligence of his spouse in operating a community automobile).

Here, Plaintiff has pleaded community liability for attorney Lucia's legal malpractice. Plaintiff alleges that Anthony R. Lucia committed legal malpractice while practicing law and earning income for the benefit of the community. (Dkt. # 5 at 16.) Thus, Plaintiff has done all that he needs to do to survive a motion to dismiss under *Peagler*. Lucia's motion to dismiss is therefore denied in this respect.

## II. Motion to Dismiss for Legal Malpractice and Breach of Fiduciary Duty for Failing to Sue Various Third Parties

Defendants argue that all claims against them for failing to bring claims against "various other third parties" are barred by the applicable statute of limitations and must be dismissed. (Dkt. # 50 at 3-4.) Plaintiff argues that the Complaint was timely filed because Arizona has adopted, in all but name, the "continuous representation" rule. (Dkt. # 71 at 6-8.) The Court rejects that argument. The "continuous representation" rule, as adopted by New York and other states, "provides that the statute of limitations does not run during the duration of the attorney-client relationship." *Amfac I*, 138 Ariz. at 158 n.5, 673 P.2d at 798 n.5 (citing *Siegel v. Kranis*, 288 N.Y.S.2d 831 (N.Y. App. Div. 1968)). In *Amfac I*, the Arizona Court of Appeals was directly presented with an opportunity to adopt the "continuous representation" rule. While the court stated that "the logic of the New York cases gives direct support to our holding," it did not adopt the "continuous representation" rule. *See Amfac I*, 138 Ariz. at 158, 673 P.2d at 798 ("*Although New York has adopted the 'continuous representation' rule*, the logic of the New York cases gives direct support to our holding.") (emphasis added and footnote omitted). Instead, *Amfac I* held that the cause of action "accrues when the plaintiff knew or should reasonably have known of the malpractice." *Id.* at 156, 673 P.2d at 796.

Even in the absence of Arizona's adoption of the continuous representation rule, however, dismissal of these claims nonetheless remains inappropriate. In the instant case, Defendants failed to file claims against various third parties before November 29, 2003, two years after the Order of Relief was entered by the Bankruptcy Court. (Dkt. # 5 at 6.) *See* Ariz. Rev. Stat § 12-542 (stating that actions for injuries caused to another person shall be

1  "commenced and prosecuted within two years after the cause of action accrues."). Plaintiff also failed to file any legal malpractice claims against Defendants before November 29, 2005, two years after that date. Regardless, what Abele "knew or reasonably should have known" regarding potential claims against third parties is a question of fact that is not appropriately decided on a motion to dismiss. It is plausible that the Estate had third party claims of which Abele was unaware that might have prevented the Trustee's claim for legal malpractice against the Defendants from accruing. Therefore, Defendants' motion to dismiss is denied.

**CONCLUSION**

For the following reasons:

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Charleen M. Lucia (Dkt. # 49) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of LSW, the Clausen Defendants, and Charleen M. Lucia (Dkt. # 50) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motions for Leave to File Sur-Replies (Dkt. ## 92, 95) are **DENIED**.

DATED this 31st day of July, 2009.

_____
G. Murray Snow
United States District Judge