1 **WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|   |   |
|---|---|
| Robert A. Mackenzie, trustee of the bankruptcy estate of WAVO corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Leonard, Collins and Gillespie, P.C., *et al.*,<br><br>Defendants. | No. CV-08-1737-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Partial Summary Judgment of the Berry Defendants. (Dkt. # 111.) For the following reasons, the Court denies the Motion.[1]

**BACKGROUND**

In 2001, National Datacast, Inc. ("NDI"), a creditor of WAVO corporation, obtained a judgment against WAVO. While trying to execute the judgment, NDI discovered that WAVO's officers and directors had engaged in fraud, breach of fiduciary duty, mismanagement, and self-dealing. NDI and other creditors of WAVO filed an involuntary bankruptcy petition against WAVO to prevent the further dissipation of WAVO's assets and

---

[1]Plaintiff's supplemental request for oral argument (Dkt. # 128) is denied as the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

to recover transfers made from WAVO to third parties. Patrick Abele was appointed as Trustee of the WAVO Bankruptcy Estate. As Trustee, Abele retained several law firms as counsel for various actions in connection with the Bankruptcy Estate. These firms (collectively "the Law Firm Defendants") included Leonard, Collins, and Gillespie, P.C. ("LC&G"); Collins, May, Potenza, Baran & Gillespie ("the Collins Firm"); Treon, Strick, Lucia, and Aguirre, P.A. ("TSL&A"); and Treon, Whitten, and Berry, PLLC ("TW&B").

On October 3, 2003, Abele, represented by TSL&A, TW&B, and various attorneys within those firms, filed a complaint against WAVO's officers, their respective wives, and Plymouth DeWitt, L.L.C., a Nevada corporation owned by David Deeds, a former WAVO officer ("the Deeds Litigation"). In August 2004, Abele retained Defendants Lucia Stark Williamson LLP ("the Lucia Firm") and Whitten Berry, PLLC ("the Berry Firm") as special counsel to substitute for the firms of TSL&A and TW&B, respectively.

The Deeds Litigation, however, did not progress actively. On May 24, 2005, Anthony R. Lucia passed away. Plaintiff alleges that without Lucia, various Defendants were not competent to handle the Deeds Litigation. Plaintiff further alleges that for more than seven months following Lucia's death, Defendants did nothing to advance the estate's claims or suggest alternate counsel. On January 26, 2006, the District Court, dismissed the case with prejudice against Abele for the failure of his attorneys to prosecute the Deeds Litigation. Following the dismissal, Abele resigned as Trustee, and Plaintiff Robert A. Mackenzie was appointed Successor Trustee ("Plaintiff"). On appeal to the Ninth Circuit Court of Appeals, Defendants acknowledged that they failed to diligently prosecute the Deeds Litigation, but argued that dismissal of the case was an unnecessarily harsh sanction. On April 24, 2008, however, the Ninth Circuit rejected this argument and affirmed the District Court's dismissal.

In September 2008, Plaintiff filed the instant complaint against the Law Firm Defendants, Daniel P. Collins, Curt W. Clausen, Christopher J. Berry, Roseanne K. Collins,

Julie Clausen, Jean Ann Berry and Charleen M. Lucia[2] (collectively "Defendants"). Based on the Defendants failure to prosecute the Deeds Litigation, the complaint alleges causes of action for legal malpractice, breach of fiduciary duty, and conversion. (Dkt. # 5.)

On September 14, 2009, Defendants TW&B, the Berry Firm, Christopher J. Berry, and Jean Ann Berry (collectively "the Berry Defendants") moved for partial summary judgment with respect to Plaintiff's claims for legal malpractice and breach of fiduciary duty. (Dkt. # 111 at 1–2.) On October 19, Defendants LC&G, the Collins Firm, Daniel P. Collins, and Roseanne K. Collins joined the Motion. (Dkt. # 120.) These Defendants contest that Plaintiff's claim for legal malpractice is barred by the statute of limitations because the Successor Trustee opined in August 2006, more than two years before filing this case, that at least some of Plaintiff's damages became irreversible prior to the conclusion of Plaintiff's underlying appeal.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

---

[2] Plaintiff's complaint names Charleen M. Lucia both in her capacity as a personal representative of Anthony R. Lucia and in her individual capacity.

U.S. 317, 323 (1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

# DISCUSSION

Plaintiff's claims for legal malpractice and breach of fiduciary duty did not accrue until Plaintiff's underlying appeal in the Deeds litigation was completed. *See Amfac Distrib. Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 (Ct. App. 1983) ("*Amfac I*"), *approved as supplemented by*, 138 Ariz. 152, 673 P.2d 792 (1983) ("*Amfac II*"). This is so, even though Plaintiff opined more than two years before bringing these malpractice claims that a successful appeal might not completely eliminate all of the damages suffered as a result of Defendant's alleged misconduct in the Deeds Litigation. *See id.*

## I. Claims for Attorney Misconduct and Breach of Fiduciary Duty Accrue when Damages Become Irrevocable and Irremedial.

Under Arizona law, claims for legal malpractice and breach of fiduciary duty are governed by a two-year statute of limitations. *See* Ariz. Rev. Stat. § 12-542; *see also Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (Ct. App. 1996). The two-year limitations period "begins to run when a cause of action accrues." *Commercial Union Ins. Co. v. Lewis and Roca*, 183 Ariz. 250, 254, 902 P.2d 1354, 1359 (Ct. App. 1995) (citing Ariz. Rev. Stat. § 12-542). As the Arizona Court of Appeals stated in *Commercial Union*,

> [A] cause of action for legal malpractice accrues when the client both: (1) has sustained appreciable, non-speculative harm or damage as a result of such malpractice and (2) knows, or in the exercise of reasonable diligence should know, that the harm or damage was a direct result of the attorney's negligence.

*Id.* at 253, 902 P.2d at 1358. The Arizona Supreme Court has further explained that a "claim of legal malpractice requires more than negligence by an attorney." *Glaze v. Larsen*, 207

Ariz. 26, 29, 83 P.3d 26, 29 (2004). Instead, "actual injury or damages must be sustained before a cause of action in negligence is generated." *Id.* In malpractice claims based on attorney misconduct, a plaintiff's injury or damages are deemed to be "actual" and "appreciable" when the harm to the client becomes "irremedial" and "irrevocable." *Commercial Union*, 183 Ariz. at 254, 902 P.2d at 1358 (citing *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796 and *Amfac II*, 138 Ariz. at 154, 673 P.2d at 794).

When attorney misconduct occurs in the context of litigation, Arizona courts have further held that the resulting malpractice claim does not accrue until the appellate process has been either fully exhausted or waived. *See Amfac II*, 138 Ariz. at 154, 673 P.2d at 794 ("[I]n legal malpractice cases, the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal.") As the Arizona Court of Appeals explained in *Amfac I*,

> When malpractice occurs in the course of litigation, . . . [i]t is not possible to readily determine whether a lawyer's negligence . . . will ultimately result in damage to his client. Apparent damage may vanish with successful prosecution of an appeal and ultimate vindication of the attorney's conduct by an appellate court.

138 Ariz. at 156, 673 P.2d at 796. The Arizona Supreme Court later affirmed *Amfac I*, holding that a claim for legal malpractice "accrues when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain and not contingent upon the outcome of an appeal." *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793 (internal quotation omitted). In so holding, the court also observed that "an unsuccessful party's damages are [not] certain, fixed, or irreversible upon entry of judgment" by the trial court because such damages may be "considerably lessened or possibly eliminated" if the plaintiff is "successful on appeal." *Id.* at 154 n. 2, 673 P.2d at 794 n. 2. And, while this standard was originally promulgated in cases dealing with claims for attorney malpractice, courts have since extended *Amfac I & II* to claims for breach of fiduciary duty. *See Cecala v. Newman*, 532 F. Supp.2d 1118, 1143 (D. Ariz. 2007).

- 5 -

**II. Plaintiff's Damages Did Not Become Fixed Until the Underlying Appeal in the Deeds Litigation became Final.**

In the amended complaint, Plaintiff alleges that Defendants' misconduct during the Deeds Litigation prevented the bankruptcy estate from recovering damages for the alleged fraudulent transfers from WAVO insiders to third parties. These damages remained speculative and remote until Plaintiff's underlying appeal became final on July 23, 2008. Until that date, the potential for success by the Trustee in the Deeds Litigation had not been extinguished. Had the Ninth Circuit reversed the District Court's dismissal, and had the underlying case resulted in a judgment that fully compensated the bankruptcy estate for its injuries, there might not have been any damages as a result of Defendant's mishandling of the Deeds Litigation. In other words, Plaintiff's damages were not "fixed," "irreversible," or "remedial." *See Amfac II*, 138 Ariz. at 154 n. 2, 673 P.2d at 794 n. 2. Instead those damages were still "contingent upon the outcome of an appeal" as a successful result could have "substantially limited" or even "eliminated" the damages resulting from Defendants' misconduct. *See id.*

The Berry Defendants, however, point to the deposition testimony from the Plaintiff's Successor Trustee, in which he opined that some of the damages resulting from Defendants' misconduct in the Deeds Litigation had become irreparable as of August 2006. Because this belief arose more than two years before Plaintiff filed his malpractice claims, the Berry Defendants argue these claims are time-barred under Arizona Revised Statute Section 12-551. In his deposition, the Successor Trustee indicated that in August of 2006, he would have agreed with the following statement:

> [E]ven if the decision of the District Court is ultimately reversed [on appeal], the Estate's ability to engage competent counsel and to obtain and enforce a judgment against the WAVO Insiders has been irreparably and materially impaired as a result of the passage of five years since the Trustee was appointed, coupled with the additional delays that are now being sustained while the matter is on appeal.[3]

---

[3]This statement is contained in a letter drafted on November 29, 2006 by the Successor Trustee's special counsel, Arthur E. Cirulnick.

- 6 -

(Dkt. #112 Ex. 5 at 38–40; Ex. 6 at ¶ 5F.) In subsequent deposition testimony, however, the Trustee clarified that successfully prosecuting the Estate's claims in the Deeds Litigation might still have been possible if the Ninth Circuit had reversed the District Court's adverse judgment:

> Irreparable impairment? I agree with that. The extent is unknown. . . . [R]ather than starting at the foot of the hill[,] if this thing had been reversed, we may have started down below.
>
> * * *
>
> That's not to say we couldn't have accomplished getting to the top of the hill, but it would have been a lot more difficult.
>
> * * *
>
> If the Court of Appeals had reversed, it would have been extremely difficult to find counsel to take it over unless for some reason existing counsel, who had all the experience and knowledge to this point, was willing to step in and take it forward, to, again correct that which was not done earlier.

(Dkt. # 112, Ex. 5 at 38–40.) In another portion of his deposition, the Successor Trustee further stated that "while the estate had been damaged" by Defendants' misconduct, it was unclear whether "that damage could be remedied" on appeal. (Dkt. # 112, Ex. 5 at 30.)

At most, this evidence creates a question of fact as to whether Plaintiff believed that it had suffered irreparable harm more than two years before he filed this complaint. And, while the Trustee's testimony does suggest some awareness of damages as of August 2006, this evidence does not demonstrate that Plaintiff's damages were actually irremedial or irreversible at that time. *See Celotex*, 477 U.S. at 323 (observing that the party moving for summary judgment has the burden of demonstrating the absence of a material fact when that party carries the burden of proof on issue at trial). The Successor Trustee's testimony indicates that Defendants' misconduct disadvantaged plaintiff and made recovery difficult, but it does not demonstrate that Plaintiff would have been unable to recover the full extent of the Bankruptcy Estate's damages in the Deeds Litigation if the Ninth Circuit had reversed the lower court's dismissal of those claims. Additionally, inasmuch as the Trustee testified that a favorable Ninth Circuit decision might have corrected any damages resulting from

Defendants' misconduct, this evidence actually suggests that Plaintiff's harm did not become fixed until the Ninth Circuit's decision in the Deeds Litigation became final in July 2008.

To support their argument that damages were fixed prior to September of 2006, the Berry Defendants further offer the November 29, 2006 letter, in which the Successor Trustee's counsel indicated that twelve million dollars would be a fair and reasonable amount to compensate the Estate for the damages sustained. (Dkt. # 112, Ex. at 8.) This letter, though an estimate of damages as of November 29, 2006, does not provide evidence that damages were fixed. Again, under Arizona law, damages resulting from attorney misconduct in the course of litigation do not become fixed until an underlying appeal is exhausted or waived. *See Amfac II*, 138 Ariz. at 154, 673 P.2d at 794. It is undisputed that the November 29, 2006 letter was drafted before Plaintiff's underlying appeal in the Deeds Litigation became final. Yet, even if this letter does suggest that damages were somehow fixed as of November 29, 2006, Plaintiff's complaint was still timely under Section 12-542's two-year statute of limitations. Plaintiff filed his complaint on September 23, 2008; accordingly, the action was timely filed as long as damages did not become fixed prior to September 23, 2006. Because November 29, 2006 clearly falls within the two-year limitations period and since there is no reason for imputing this estimate to the trustee earlier than that date, Plaintiff's claim was timely under Arizona law.

In addition, to the extent that the Successor Trustee's testimony suggests that some of the harm caused by Defendants' misconduct became irreversible prior to September 2006, Plaintiff's damages still did not become fixed until the Ninth Circuit affirmed the District Court's order dismissing Plaintiff's claims. Again, under Arizona law, damages for malpractice arising in the course of litigation do not become "certain, fixed, or irreversible" where those damages might be "considerably lessened or possibly eliminated" on appeal. *Amfac II*, 138 Ariz. at 154 n. 2, 673 P.2d at 794 n. 2; *see also Althaus v. Cornelio*, 203 Ariz. 597, 600, 58 P.3d 973, 976 (Ct. App. 2002) (holding that damages in a malpractice claim became fixed because a settlement agreement "eliminate[d] any possibility of the malpractice damages changing"). In other words, when a plaintiff's underlying litigation is still pending

- 8 -

1  on appeal, awareness or knowledge that some damages might be irreversible is not sufficient
2  to trigger the statute of laminations. Instead, damages arising from attorney misconduct
3  during litigation are not considered fixed as long as there is still a possibility that the
4  damages could be considerably lessened, substantially changed, or eliminated. In this case,
5  damages did not become fixed while Plaintiff's underlying appeal was still pending as a
6  successful appeal may have considerably altered the amount or degree of harm.

The Court also rejects the Berry Defendants' contention that the facts of this case merit an exception to *Amfac I & II*. First, Defendants' reliance on *Cecala*, 532 F. Supp.2d at 1143 is misplaced. In *Cecala*, a client raised claims for attorney malpractice, breach of fiduciary duty, and intentional infliction of emotional distress. *Id.* at 1142–43. While the malpractice and breach of fiduciary claims were based on the attorney's misconduct during the course of litigation, the intentional infliction of emotional distress claim was based on the attorney's sexual relationship with the client. *Id.* at 1143. While the district court found that the malpractice claims were timely under *Amfac I & II*, the court held that the client's claim for emotional distress was barred because the alleged damages resulting from the attorney's improper sexual relationship were not contingent on the client's underlying appeal. *Id.* Unlike the claim for emotional distress in *Cecala*, however, the alleged damages in this case arose as a result of Defendants' failure to prosecute the Bankruptcy Estate's claims during the Deeds Litigation. Furthermore, as discussed above, these damages could have been reversed or at least substantially altered by a successful result on appeal.

Next, the Berry Defendants argue that *Amfac I & II* do not apply because the Deeds Litigation was dismissed more than two years before the Successor Trustee filed his complaint in this case. (*See* Dkt. # 123 at 5.) To support this argument, the Berry Defendants point to a footnote in *Amfac I*, which provides, "There could be some conceivable circumstances where the client obtains another professional opinion that his attorney's work during litigation is negligent." 138 Ariz. at 157 n. 3, 673 P.2d at 797 n. 3. This exception, however, does not apply when the alleged professional opinion is the trial court's order or judgment dismissing a plaintiff's underlying claims. To hold otherwise would eviscerate

*Amfac I & II* since a trial court's non-final judgment would be deemed sufficient to trigger the statute of limitations even when a plaintiff has not exhausted or waived the right to judicial review. In rejecting this very approach, the Arizona Court of Appeals explained:

> If . . . a cause of action accrues at the time of the conduct or initial judgment rather than at the time the damage has become irremedial, a client would constantly be required to second-guess his attorney and would be forced to obtain other legal opinions on the attorney's handling of the case. Nothing could be more destructive of the attorney-client relationship.

*See id.* at 157–58, 673 P.2d at 797–98 (footnote omitted).

Finally, the Berry Defendants' suggestion that the Successor Trustee's opinion proves "actual" and "appreciable" damages that were not contingent on the outcome of an appeal is disingenuous. The Berry Defendants served as Plaintiff's counsel of record and prosecuted the appeal through the Ninth Circuit's decision. This all occurred long after the date on which the Berry Defendants now claim that damages became "fixed." If damages truly were fixed, it seems illogical that the Berry Defendants would have put forth as much time and effort in attempting to reverse the District Court's decision in order to keep the underlying Deeds Litigation alive.

## CONCLUSION

The Court holds that Plaintiff's claims for malpractice and breach of fiduciary duty did not accrue until the underlying appeal became final.

**IT IS THEREFORE ORDERED** that the Berry Defendants' Motion for Partial Summary Judgment (Dkt. # 111) is **DENIED**.

DATED this 4th day of January, 2010.

_____
G. Murray Snow
United States District Judge